UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MELISSA STEWART,

                                                                           <u>MEMORANDUM AND ORDER</u>

                    Plaintiff,                                            CV 12-0320

        -against-                                                  (Wexler, J.)

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, DETECTIVE JOHN
P. DEZELIC, SHIELD #1236, POLICE OFFICER
ALVAREZ, SHIELD #8169, JANE/JOHN
DOE NASSAU COUNTY POLICE DEPARTMENT
OFFICERS,

                    Defendants.

------------------------------------------------------------X

APPEARANCES:

    BARKET MARION EPSTEIN & KEARON LLP
    BY:   AMY BETH MARION, ESQ.
    Attorneys for Plaintiff
    666 Old Country Road, Suite 700
    Garden City, New York 11530

    THE OFFICE OF THE NASSAU COUNTY ATTORNEY
    BY:   RALPH J. REISSMAN, ESQ., Deputy County Attorney
    Attorneys for Defendants
    One West Street
    Mineola, New York 11501

WEXLER, District Judge:

       Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging a myriad of claims stemming from her arrest for shoplifting in September 2010. Before the Court is the Defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

Plaintiff opposes the motion on the ground that there are genuine issues of material fact necessitating a trial in this action. For the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

The Plaintiff, Melissa Stewart ("Stewart"), is an African-American female who resides in Brooklyn. (Def. R. 56.1 Statement ("Def. 56.1") ¶¶ 1-2; Pl. R. 56.1 Statement ("Pl. 56.1") ¶¶ 1-2.) Defendant Rodolfo Alavarez ("Alvarez") is a Nassau County Police Officer assigned to the Fourth Precinct, which covers the geographical area of Valley Stream. (Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.) Defendant John P. Dezelic is a Nassau County Detective assigned to the Fourth Precinct. (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.)

On June 10, 2010, the date of the incident underlying this action, Officer Alvarez received a radio call during his tour of duty directing him to respond to a larceny at the Victoria's Secret store located in the Green Acres Mall in Valley Stream. (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.) Upon arriving at the Victoria's Secret store, Alvarez interviewed Delfin Ruiz ("Ruiz"), the store's Loss Prevention Manager. (Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7.) Ruiz advised Alvarez that two individuals, an African-American male and an African-American female, had just stolen nine boxes of perfume from the store, which had been captured on video surveillance. (Id.) Ruiz further advised Alvarez that he recognized the two individuals from prior shoplifting incidents and identified the vehicle used by the shoplifters, as well as its license plate. (Id.) Ruiz provided a full and sworn statement containing this information in a Police Department Supporting Deposition. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.)

After speaking with Ruiz, Alvarez called in a Case Report description to headquarters. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) Alvarez did not have any further involvement in the investigation or arrest of Plaintiff after this point. (Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.)

On or about June 11, 2010, Defendant Dezelic was assigned to investigate the June 10, 2010 Victoria's Secret theft. (Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13.) Dezelic reviewed Ruiz's Supporting Deposition and then went to Victoria's Secret to speak with Ruiz directly. (Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15.) While at Victoria's Secret, Ruiz showed Dezelic the videotape of the June 10, 2010 shoplifting incident. (Id.)

After speaking with Ruiz, Dezelic conducted a search concerning the license plate number and vehicle identified by Ruiz as having been used by the shoplifters on June 10, 2010. (Def. 56.1 ¶ 16.) The results of the search indicated that the vehicle, a black Mazda Millenium, was owned by and registered to Plaintiff. (Id.) Using this information, Dezelic accessed Plaintiff's driver's license photograph and had the Police Department's Photograph Unit assemble a package of five additional photos of African-American females similar in age and appearance to Plaintiff. (Def. 56.1 ¶ 17.) Dezelic then returned to Victoria's Secret on June 11, 2010 and showed Ruiz the photo array, at which point Ruiz identified Plaintiff as the female shoplifter involved in the June 10, 2010 incident. (Def. 56.1 ¶ 18.)

In September 2010, Dezelic went to Plaintiff's residence in Brooklyn to interview her about the shoplifting incident. (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 29.) Since Plaintiff was not home, Dezelic left his business card in her door. (Id.) Plaintiff thereafter telephoned Dezelic, at which point he advised Plaintiff that he had a warrant for her arrest for shoplifting and instructed her to come to the police precinct. (Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30.) Plaintiff went to the police precinct

on September 14, 2010 and was arrested by Dezelic for the June 10, 2010 shoplifting incident. (Id.) Plaintiff was issued a Desk Appearance Ticket and was released that same day. (Def. 56.1 ¶¶ 32-33; Pl. 56.1 ¶¶ 32-33.)

The criminal charges against Plaintiff were dismissed in July 2011. (Def. 56.1 ¶¶ 42-43; Pl. 56.1 ¶¶ 42-43.) Plaintiff commenced the within action on January 24, 2012, alleging various violations of her civil rights pursuant to 42 U.S.C. § 1983, as well as municipal liability and a number of state law claims. Defendants now seek summary judgment with respect to all of Plaintiff's claims.

DISCUSSION

I.  Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing

summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II. The Nassau County Police Department is Not a Suable Entity

Defendants seek to have the Nassau County Police Department dismissed from this action on the grounds that it is not a suable entity. Defendants are correct.[1] "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (dismissing claims against White Plains Department of Public Safety where claims also asserted against municipality); see also Fanelli v.

---

[1] The Court notes that Plaintiff's motion papers fail to raise any opposition to this argument by Defendants.

Town of Harrison, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) (dismissing claims against police department where municipality, as the "real party in interest," was named as well); Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued independently because it is an agency of the City of New York.").

Accordingly, Defendants' motion for summary judgment is granted with respect to this issue and the Nassau County Police Department is hereby dismissed from this action.

III.     Municipal Liability

In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff "must show that the violation of his constitutional rights resulted from a municipal custom or policy." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991) (citing cases). Respondeat superior may not serve as the basis for imposing municipal liability. See Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). The plaintiff in an action brought pursuant to 42 U.S.C. § 1983 bears the burden of establishing municipal liability. See Rubio v. County of Suffolk, No. 01-CV-1806, 2007 U.S. Dist. LEXIS 75344, at *6-7 (E.D.N.Y. Oct. 9, 2007) (citing Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)).

In seeking to hold a municipality liable under § 1983, a plaintiff is not required to demonstrate that the municipality had "an explicitly stated rule or regulation." Ricciuti, 941 F.2d at 123 (citing Villante v. Dep't of Corr., 786 F.2d 516, 519 (2d Cir. 1986)). Rather, "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials."

Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing Turpin v. Mailet, 619 F.2d 196, 200 (2d Cir. 1980)). However, "[t]he mere assertion that there exists such a policy or custom, absent specific allegations of fact tending to support such an inference, is insufficient." Batista v. City of New York, No. 05-CV-8444, 2007 U.S. Dist. LEXIS 71905, at *14 (S.D.N.Y. Sept. 24, 2007) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Moreover, "allegations of a single, isolated, incident of [municipal] misconduct will not suffice" for purposes of demonstrating the existence of a municipal policy. Aguilera v. County of Nassau, 425 F. Supp. 2d 320, 324 (E.D.N.Y. 2006); see also Dwares, 985 F.2d at 100 ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.") (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)) (additional citations omitted).

Plaintiff seeks to impose municipal liability based on a failure to train or supervise theory. The Supreme Court has held that such liability will only be triggered where the failure to train or supervise "amounts to deliberate indifference to the rights of persons with whom the [municipal actor] comes into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish such a claim, plaintiff must "identify a specific deficiency in the [municipal entity's] training program and establish that that deficiency is 'closely related to the ultimate injury' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting Harris, 489 U.S. at 391)). "That a particular [municipal actor] may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the [actor's] shortcomings may have resulted from factors other than a faulty

training program." Harris, 389 U.S. at 390-91. Neither is it enough to prove that an injury or accident "could have been avoided" if a municipal actor had been provided better or more training since "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable [municipal actors] to respond properly to the usual and recurring situations with which they must deal." Id. at 391.

The Second Circuit has identified three elements that are required in order to satisfy the "deliberate indifference" standard necessary for a finding of municipal liability under a failure to train claim. See Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1993). First, plaintiff must establish that "a policymaker knows 'to a moral certainty' that [his or] her employees will confront a given situation." Id. Second, plaintiff must demonstrate that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." Id. Finally, plaintiff must prove that "the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights." Id.

Plaintiff has failed to identify, let alone establish, any municipal policy upon which to base her Monell claim. Nor does the evidence presented support an inference that such a policy exists. Rather, plaintiff's Complaint simply sets forth a "particular[, isolated] instance of alleged misconduct by low-ranking police officers, which alone is insufficient to state a claim" for municipal liability under 42 U.S.C. § 1983. Batista, 2007 U.S. Dist. LEXIS 71905, at *14 (citing Ricciuti, 941 F.2d at 123). The allegations in plaintiff's Complaint are exactly the type of "'conclusory, boilerplate statement[s]'" that are insufficient to demonstrate the existence of an unconstitutional municipal policy. Smith v. City of New York, 290 F. Supp. 2d 317, 322

(E.D.N.Y. 2003) (quoting Perez v. County of Westchester, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000)).

Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's Monell claim is granted and that claim is hereby dismissed.

IV.     Supervisory Liability

Defendants are also granted summary judgment with respect to Plaintiff's claim of "supervisor liability" under Section 1983. First, neither of the individual Defendants named in this action - Alvarez and Dezelic - are supervisors within the Nassau County Police Department. Rather, Alvarez is an Officer and Dezelic is a Detective. Neither position involves a supervisory capacity. Second, with respect to Defendant Nassau County, for the same reasons the County cannot be held liable under Monell, it similarly cannot be held liable under Section 1983 for supervisory liability based on the evidence presented in the within action.

Accordingly, Defendants motion for summary judgment is granted with respect to Plaintiff's claim of supervisory liability and that claim is hereby dismissed.

V.      The Remaining Claims

Having reviewed the papers in support of and in opposition to Defendants' motion for summary judgment, the Court finds that genuine issues of material fact exist with respect to Plaintiffs' remaining federal claims. Such issues of material fact preclude the entry of summary

judgment with respect to those claims at this time.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's Monell claim and the claim of supervisory liability under 42 U.S.C. § 1983 and those claims are hereby dismissed. Defendants' motion is further granted in that the Nassau County Police Department is hereby dismissed from this action as it is not a suable entity. In all other respects, Defendants' motion is denied. The Clerk of the Court is directed to terminate the motion filed under docket entry number 18 and to terminate the Nassau County Police Department as a party to this action.

Jury selection in this action will proceed on June 2, 2014, as previously scheduled.

**SO ORDERED:**

Dated: Central Islip, New York
       January 17, 2014

                                          /s/
                                          LEONARD D. WEXLER
                                          United States District Judge

---

[2] Defendants seek summary judgment with respect to Plaintiff's state law claims on the grounds that the Court should decline to exercise supplemental jurisdiction over them, presuming that the Court would grant summary judgment in their favor and dismiss all of Plaintiff's federal claims. Defendants offer no substantive arguments as to why Plaintiff's state law claims should be dismissed. Since several of Plaintiff's federal claims will proceed, under the doctrine of supplemental jurisdiction, Plaintiff's state law claims remain as well.